UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM A. KOCH,

    Plaintiff,

    v.

THE BURLINGTON NORTHERN &
SANTA FE RAILWAY COMPANY,

    Defendant.

Case No. C05-1989RSL

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. #32) filed by defendant BNSF Railway Company ("BNSF"). Plaintiff, an employee of BNSF, brings an action under the Federal Employers' Liability Act, ("FELA"), 45 U.S.C. § 51 *et seq.* alleging that BNSF's negligence caused his injuries. BNSF argues that plaintiff's FELA claim is preempted by federal regulations, and even if preemption does not apply, the accident was caused solely by plaintiff's own negligence.

For the reasons set forth below, the Court denies defendant's motion.

## II. DISCUSSION

**A.    Background Facts.**

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 1

On January 19, 2005, plaintiff was injured when he was struck by a train car while working at the Delta yard at the Port of Everett pier. Plaintiff was working on the "Boeing Hill job," which involved moving 16 and 24 foot wide containers holding large sections of Boeing airplanes. The wide cars are approximately one and a half to two times wider than normal cars. The cars are so wide that they foul adjacent tracks, which must be cleared for five miles in each direction while the cars are moved.

Before Koch began working on the Boeing wide car job, he had a job safety briefing with the Trainmaster on duty. Koch Dep. at p. 62. The Trainmaster "emphasized to me these cars are super wide. You have to really be careful. You have to really be careful." Id. The Trainmaster also "explained how wide that wide car is, is really wide. And so there was a lot of talk about it all week long." Id. The Trainmaster warned Koch that the cars are "really wide and don't turn your back on it." Id. at p. 63.

On the day of the incident, plaintiff was performing brakeman's duties, which included "[p]icking up cars, setting out cars, throwing switches, riding the engine from different location to location." Id. at p. 56. Although it was plaintiff's first week on that particular job, he had performed switchman/brakeman duties for 30 years. That morning, Koch attended a job briefing with the conductor to go over the plan and to ensure that the jobs would be performed safely. Id. at p. 68. A second job briefing was held when the crew arrived at the pier.

After the briefings, the conductor instructed Koch to line a rail switch in order to move the wide cars eastbound on the pier track, which he did. After the cars were moved, they were covering a switch located under a cover in the ground. Koch instructed the engineer to move ahead two car lengths to gain access to the switch. Afterwards, Koch radioed the engineer and informed him to move the cars back again. Koch then turned away and walked ahead of the moving car between a fence and the track toward what be believed was a clearance point. Koch assumed that he would be clear of the moving car before it reached him. However, as he turned around to look at the car, it struck him in the right shoulder, throwing him to the ground. Koch

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 2

alleges that he continues to suffer pain from his injuries.

Plaintiff filed his complaint with this Court on November 30, 2005. Jurisdiction exists based on diversity of the parties.

**B.      Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.      Analysis.**

FELA provides the exclusive remedy for a railroad employee injured as a result of his or her employer's negligence. See, e.g., Wabash R.R. Co. v. Hayes, 234 U.S. 86, 89 (1914). In this case, plaintiff argues that BNSF was negligent in three ways: (1) failing to install audio and/or visual warning devices on the wide cars; (2) failing to alert employees of the clearance point around the wide cars; and (3) failing to provide adequate clearance areas around the wide cars. Complaint at ¶ 3.2.

**1.      Standards of Care and Proof.**

As an initial matter, the parties dispute the applicable standards. Defendant argues that the standard is ordinary care, while plaintiff argues that he must only show "slight" negligence to survive this motion. Defendant is correct about the standard of care, and plaintiff is correct about the quantum of proof. Although plaintiff still bears the burden of proving negligence, which involves a violation of the duty of ordinary care, "courts have held that only 'slight' or 'minimal' evidence is needed to raise a jury question of negligence under FELA." Mendoza v. Southern Pac. Transp. Co., 733 F.2d 631, 632 (9th Cir. 1984) (citations omitted). In a FELA

case,

> the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.

Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506 (1957) (internal citations omitted). Furthermore, the "jury's right to pass upon the questions of fault and causation in FELA actions must be viewed liberally; the jury's power to engage in inferences is significantly broader than in common law negligence actions." Pierce v. Southern Pac. Transp. Co., 823 F.2d 1366, 1370 (9th Cir. 1987). Accordingly, the Court will determine whether plaintiff has shown negligence using traditional standards, but will find that a jury question exists if plaintiff has shown even slight evidence of employer negligence.

**2.    Preemption.**

BNSF argues that the regulations promulgated under the Federal Railroad Safety Act of 1970, ("FRSA"), 49 U.S.C. § 20101 *et seq.* preempt plaintiff's FELA claim. Congress enacted the FRSA "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Congress intended that "[l]aws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable." Id. at § 20106. Pursuant to authority granted under the FRSA, the Department of Transportation has promulgated regulations to carry out the goals and objectives of the statute. In contrast to the FRSA, FELA is a general negligence statute, and it "neither prohibits nor requires specific conduct by a railroad." Waymire v. Norfolk & W. R.R. Co., 218 F.3d 773, 775 (7th Cir. 2000). It is undisputed that at the time of the accident, BNSF was in compliance with all FRSA regulations.

Because of the express goal of promoting uniformity, BNSF's argument that it complied with all applicable regulations has some appeal. However, BNSF's preemption contention suffers from fundamental flaws. As an initial matter, federal regulations do not "preempt" a

federal statute. Rather, some courts have held that FRSA regulations supercede FELA where the FRSA regulations cover the subject matter and the negligence claim, if brought under state law, would be preempted. See, e.g., Waymire, 218 F.3d at 777 ("To allow a plaintiff to argue adequacy of warning claims under FELA but not under state law would undermine the railroad safety uniformity intended by Congress and we decline to do this") (citing CSX Transp., Inc. v. Easterwood, 507 U.S. 658 (1993)).

Even if this Court were to follow Waymire and find plaintiff's negligence claim superceded if it would be preempted, defendant "must establish more than that [the regulations] 'touch upon' or 'relate to' that subject matter" to show preemption. Easterwood, 507 U.S. at 664 (internal citation omitted). Rather, the party must establish that the "federal regulations substantially subsume the subject matter of the relevant state law." Id. In contrast to the cases on which it relies, BNSF has failed to identify any specific relevant regulations. See, e.g., Waymire, 218 F.3d at 777 (finding superceded FELA claims that were based on allegations of excessive train speed and inadequate warnings at crossings where specific regulations set forth standards);[1] but see Sindoni v. Consolidated Rail Corp., 4 F. Supp. 2d 358, 365 (M.D. Pa. 1996) (granting summary judgment on plaintiff's claim that the railroad's provision of nonrequired equipment, including airbags and seatbelts, could have prevented his injury). BNSF has not identified any regulations governing warning devices on railroad cars or clearance distances around cars.[2] Instead, BNSF makes a much more general argument:

---

[1] The warning devices at issue in Easterwood and Waymire were federally funded, installed, and approved crossing devices. Easterwood, 507 U.S. at 663; Waymire, 218 F.3d at 774. In that respect, those devices were vastly different from those at issue in this case. Furthermore, the high level of regulation of those crossing warning devices undermines BNSF's argument that the FRSA regulations preempt claims based on all warning devices.

[2] Rather than identifying specific relevant regulations, BNSF left the Court to sift through approximately one hundred technical regulations to find ones that might be relevant, then analyze, without guidance from BNSF, whether and how they might apply to the relevant subject matters.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 5

1
2
3
4
>By promulgating safety requirements relating to railroad operations, railcars and areas adjacent to tracks, the FRA [sic] has covered the field and FELA claimants are preempted from pursuing claims based on "defects" for failure to provide additional warning devices on railcars and clearance if the railroad has met all Federal safety and operational standards. *See, e.g.*, C.F.R. §§ 214 (Railroad Workplace Safety), 215 (Railroad Freight Car Safety Standards), 217 (Railroad Operating Rules), 218 (Railroad Operating Practices), and 231 (Railroad Safety Appliance Standards).

5 Defendant's Reply at p. 9.  The Court's review of the regulations did not reveal any which set

6 forth standards for clearance distances around cars, for alerting employees of the location of

7 clearance areas, or for warning devices attached to cars.  The lack of that information undercuts

8 any argument that allowing a FELA claim would undermine the goal of uniformity.  Because

9 BNSF has not shown that the regulations substantially subsume the relevant subject matters, the

10 Court declines to find that plaintiff's negligence claim is superceded.

11       Finally, BNSF can argue that its compliance with all applicable regulations is some

12 evidence of the duty of care and the absence of a breach of that duty.  However, that evidence,

13 based on the current record, "is not conclusive proof."  Craig v. Burlington N. & Santa Fe Ry.

14 Co., C03-676P (W.D. Wash. 2004) ("The general duty of care to an employee under FELA

15 cannot be completely defined by regulations under the FRSA").

16       **3.**      **Negligence.**

17       Having found that plaintiff's FELA claim is not superceded or preempted, the Court

18 considers whether the evidence creates an issue of fact regarding BNSF's negligence and

19 whether it played any role in the incident.  Although plaintiff alleged in his complaint that BNSF

20 was negligent for failing to alert employees to the safe clearance point, BNSF's memoranda do

21 not address that issue.  Accordingly, summary judgment is not appropriate on that claim.

22       Moreover, defendant does not dispute its duty to provide adequate clearance areas around

23 the cars.  Instead, plaintiff's motion states that plaintiff "was provided with adequate clearance

24 adjacent to the incident site."  BNSF's Motion at p. 4 (citing Declaration of Michael Babik,

25 (Dkt. #27) ("Babik Decl.") at ¶¶ 4, 5, 6); Babik Decl. at ¶ 6 ("Based on my experience,

26 defendant BNSF provided Mr. Koch with a safe place to work including clearance sites adjacent

to the tracks on/near the Port of Everett Pier and movement equipment as would adequately protect employees in the vicinity"). Since 1992, Babik has worked for BNSF in various roles, including as a switchman/brakeman with Boeing wide cars, an engineer, and a Trainmaster. Id. at ¶¶ 1-3. Plaintiff, however, has provided the testimony of another BNSF engineer who opined that the wide cars posed a hazard based on the lack of alerting devices and adequate clearance between the cars and the adjacent fence. Declaration of James Smith, (Dkt. #41-2) ("Smith Decl.") at ¶ 9. Regardless of whether the Court accepts or rejects both opinions, BNSF has not shown the absence of an issue of fact on the subject.[3] Accordingly, summary judgment is not appropriate on the issue of the provision of adequate clearance.

Plaintiff also alleges that BNSF was negligent by failing to install warning devices on the wide cars. Defendant makes a compelling argument that the absence of warning devices was not the proximate cause of plaintiff's injury because he was the one who ordered the cars to move and knew that they were moving behind him. Furthermore, plaintiff was warned that the cars were very wide and not to turn his back on them, but he did so anyway. Although it is likely that a jury could be persuaded by those arguments, there is at least some evidence that BNSF's conduct was a proximate cause. For example, plaintiff alleges that he was unable to watch the wide car as it moved because he needed to observe a co-worker, and defendant has not disputed that assertion. Koch Dep. at p. 69 (explaining that another employee "had control of the move, but it's my job to then keep my eye on him in case his radio failed or something happened and he gave me a signal. I would then pass the signal to the engineer"). Also, although BNSF promulgated specific, written rules governing working with the Boeing wide cars and required employees to keep copies in their possession, plaintiff was not notified of the rules or given a copy of them. Koch Dep. at p. 61 (denying receiving a copy of the Boeing Hill Instructions).

---

[3] The parties have motions *in limine* pending which address, among other topics, the admissibility of the engineers' testimony on "expert" issues like the provision of a safe workplace. The Court will address the admissibility of those opinions in the context of the motions *in limine*.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 7

Finally, plaintiff has provided some evidence that BNSF previously equipped the wide cars with warning devices, then removed them prior to this incident. Smith Decl. at ¶¶ 5-7. Although defendant disputes that contention, the testimony must be credited as true for purposes of this motion. At least one other worker was struck by a wide car after the warning devices were removed and before Koch was injured. Id. at ¶ 8. A jury could find that plaintiff's injury was foreseeable based on that evidence. Accordingly, plaintiff has created an issue of fact regarding whether BNSF's negligence was at least a partial cause of his accident.

As a final note, a jury may find plaintiff contributorily negligent for disregarding the warnings, instructing the engineer to move the cars before he was in a safe area, and turning his back on the moving cars. This Court, however, must deny the motion because plaintiff has raised issues of fact regarding whether BNSF's negligence caused his injuries "in whole or in part." Rogers, 352 U.S. at 507; see, e.g., Taylor v. Burlington N. R.R., 787 F.2d 1309, 1314 (9th Cir. 1986) (explaining that contributory negligence is a jury question).

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant's motion for summary judgment (Dkt. #32). The Court also notes that BNSF requested, in the alternative, that the Court preclude plaintiff from arguing at trial that he was injured due to a lack of warning devices on the wide cars. Because BNSF has also filed a motion *in limine* on that topic, the Court will address the issue in the context of that motion.

DATED this 20th day of November, 2006.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 8